**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RANDY CLARK WHITACRE, )<br><br>Petitioner, )<br><br>v. )<br><br>TAMMY FERGUSON, SCI-Benner Township, Superintendent, and THE DISTRICT ATTORNEY OF INDIANA COUNTY, )<br><br>Respondents. ) | Civil Action No. 2: 13-cv-1286<br><br>United States District Judge Cathy Bissoon<br><br>United States Magistrate Judge Cynthia Reed Eddy |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, Randy Clark Whitacre, pursuant to 28 U.S.C. § 2254 be dismissed and that a certificate of appealability be denied.

## II. REPORT

### A. Relevant and Procedural Background

Petitioner, Randy Clark Whitacre ("Petitioner" or "Whitacre"), is a state prisoner confined at the State Correctional Institution – Benner in Bellefonte, Pennsylvania. He is challenging the judgment of sentence that was imposed upon him by the Court of Common Pleas of Indiana County on March 7, 2003. The Superior Court, on direct appeal, set forth the factual and procedural history of his criminal case as follows:

> On October 6, 2001, at approximately 1:30 a.m., an intruder kicked down the door of the residence of Douglas and Theresa Dalessio in Plumville, Indiana County. He proceeded upstairs where the Dalessio's [sic] and their two sons, Dylan and Devin, were asleep in their respective bedrooms. Theresa Dalessio left the bed she shared with her husband and went to the doorway between the room and the hall, where she was shot. Upon hearing the shot, Mr. Dalessio crawled

1

under the bed and while there, he was able to use his cell phone to call 911. In the meantime, the intruder walked down the hall and shot five-year old Dylan Dalessio, who was later found alive in the kitchen. While still under the bed, Mr. Dalessio heard a male voice demand, "Does anyone else want some of that?" Within minutes after the 911 call, state police arrived at the residence, but the intruder had already left. Dylan Dalessio survived and recovered from the shooting, Mrs. Dalessio died as a result of her wounds. Following an investigation, police arrested [Whitacre] and charged him with [first-degree murder, attempted murder, and burglary of an occupied structure].

At trial, the Commonwealth presented testimony and other evidence that sometime in 1997, [Whitacre] had purchased a home from Mr. Dalessio. Problems developed with the sewage system, and [Whitacre] ultimately filed a lawsuit against Mr. Dalessio alleging misrepresentation. After a hearing on the lawsuit which occurred on October 4, 2001, the matter was continued with no resolution. Sometime after 10:20 p.m. on the following evening, October 5, 2001, [Whitacre] was observed drinking at a bar. A few hours later, at approximately 1:00 a.m., on October 6, 2001, three volunteer firemen observed a vehicle resembling [Whitacre's] white pickup truck proceeding in a direction from his home towards the Dalessio residence. A short time later, the three firefighters observed the same pickup returning from the direction of the Dalessio residence going towards [Whitacre's] home  Officers responding to the shooting at the Dalessio's [sic] residence, which occurred around 1:30 a.m., found one shotgun shell casing on the Dalessio's [sic] stairway. Seven months later, in March 2002, Mr. Dalessio found another shotgun shell casing in the drawer of a dresser that had been in the upstairs hallway on the night of the shooting. At trial, the Commonwealth's expert witness, Corporal Jack Wall, testified that he made a comparison analysis of these two shell casings with a shotgun owned by [Whitacre], which [Whitacre] kept under lock and key, and that it was his opinion that the two shell casings had been discharged from [Whitacre's] shotgun.

*Commonwealth v. Whitacre*, 878 A,2d 96, 98-99 (Pa. Super. 2005). (ECF No. 20-1).

A jury convicted Whitacre of first degree murder, attempted murder, and burglary of an occupied structure. Whitacre was sentenced to life in prison plus a consecutive sentence of twenty four (24) to fifty (50) years. Attorney Thomas R. Ceraso represented Whitacre during trial, at sentencing, and on direct appeal. Timely post-sentence motions were filed, which were denied on May 30, 2003. (ECF No. 31-1.) Whitacre, through Attorney Ceraso, filed a timely

Notice of Appeal with the Pennsylvania Superior Court, which was docketed at 537 WDA 2003.

On appeal, Whitacre raised the following two claims:

> A.    DID THE LOWER COURT ERR IN PERMITTING THE TESTIMONY OF THE COMMONWEALTH'S FIREARMS EXPERT WHERE THE TESTIMONY PROVIDED WAS SUBJECTIVE RATHER THAN OBJECTIVE, AND THUS VIOLATIVE OF THE FREY STANDARD?
>
> B.    DID THE LOWER COURT ERR IN NOT GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE COMMONWEALTH'S CASE?

Brief for Appellant. (ECF No. 43-1 at 2.)  The Superior Court, by Order dated June 16, 2005, affirmed the judgment of sentence. *Commonwealth v. Whitacre,* 878 A.2d 96 (Pa. Super. 2005) (ECF No. 20-2 at 1-10).  On December 29, 2005, the Pennsylvania Supreme Court denied further review. *Commonwealth v. Whitacre,* 892 A.2d 823 (Pa. 2005). Whitacre did not seek a writ of certiorari from the Supreme Court of the United States.

On April 7, 2006, Whitacre filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 – 9546. (ECF No. 23-2 at 1). Matthew Budash, Esquire, was appointed to represent Whitacre.  On September 5, 2007, Attorney Budash was permitted to withdraw as counsel and Mark Bolkovac, Esquire, was appointed as Whitacre's PCRA counsel. On March 20, 2008, Attorney Bolkovac filed an Amended PCRA Petition and raised the following ineffective assistance of counsel claims:

> The Petitioner avers that he is eligible for relief due to the ineffective assistance of counsel, which under the circumstances of the particular case so undermine the truth-determining process that no relied adjudication of guilt or innocence could have taken place, more specifically:
>
> a.    The Petitioner avers that trial counsel was ineffective because trial counsel failed to investigate or consider omnibus pre-trial motions, specifically, a motion to suppress evidence.

b.      The Petitioner states that he is innocent of all crimes for which he was charged and convicted.

c.      Petitioner avers that trial counsel failed to have his wife, Nancy Whitacre, an alibi witness, testify that Defendant was home with her the night of the incident in question.

d.      Petitioner avers that trial counsel did not produce evidence promised in his opening statement.

e.      Trial counsel failed to subpoena the decedent's mother and sister to testify on his behalf.

f.      Trial counsel failed to file a direct / interlocutory appeal when the trial court denied a request to continue the trial when defense witnesses failed to appear.

g.      Trial counsel failed to call character witnesses on Petitioner's behalf.

h.      Trial counsel did not call an expert to refute the Commonwealth's toolmark expert or use an expert to review / rebut in the case.

i.      Petitioner avers that the District Attorney made improper, prejudicial remarks during his opening and closing statements, which were not objected to by trial counsel.

j.      By not addressing all issues on appeal, trial / appellate counsel waived issues for the Petitioner.

On June 22, 2010, Whitacre, through counsel, filed a Second Amended Petition, which added the following claim:

The trial court allowed the Commonwealth's toolmark expert to testify despite his subjective standards used for shot shell analysis.

*Commonwealth v. Whitacre*, Opinion and Order of Court, slip opinion, January 3, 2011 ("PCRA opinion).  (ECF No. 5-2, at 2-24.)  On August 10, 2008;[1] June 29, 2010; and September 15, 2010, Judge Olson held three different evidentiary hearings.  Judge Olson reviewed all but one of

---

[1]      The sole witness at the August 10, 2008, hearing was Thomas Ceraso, Esquire, whose testimony the PCRA Court accepted as credible.

Whitacre's claims, as the record was incomplete as to this one claim. On the remaining claims, the PCRA court determined that Whitacre had not been prejudiced by counsel's performance.

Due to Judge Olson's impending retirement, the final claim, whether trial counsel did not call an expert to refute the Commonwealth's toolmark expert or use an expert to review / rebut in the case, was left open. A hearing on this single issue was held before President Judge Martin on June 27, 2011. On August 4, 2011, Judge Martin issued a decision rejecting this claim finding that "Defendant cannot meet his burden of proving trial counsel's ineffectiveness."

Whitacre filed an appeal to the Superior Court. On appeal, Whitacre raised the following three claims:

> I. THE PCRA COURT COMMITTED AN ERROR OR LAW BY FAILING TO FIND TRIAL COUNSEL INEFFECTIVE FOR FAILING TO CALL THE PETITIONER'S WIFE, NANCY WHITACRE, AS AN ALIBI WITNESS.
>
> II. THE PCRA COURT ERRED BY NOT FINDING TRIAL COUNSEL INEFFECTIVE FOR FAILING TO CALL CHARACTER WITNESSES ON BEHALF OF THE PETITIONER AT THE TIME OF TRIAL.
>
> III. THE PCRA COURT ERRED BY NOT FINDING TRIAL COUNSEL INEFFECTIVE FOR ONLY UTILIZING DR. STONE, THE DEFENSE EXPERT, TO RENDER AS OPINION AS TO WHETHER OR NOT THE SHOTGUN SHELLS FOUND AT THE SCENE OF THE CRIME MATCHED THE SHOTGUN SUSPECTED IN THE SHOOTING AND NOT TO RECONSTRUCT THE SHOOTING TO FURTHER DETERMINE IF THE PETITIONER WAS THE SHOOTER.

Brief for Appellant. (ECF No. 46-1, at 2).

On May 8, 2012, the Superior Court affirmed the dismissal of the PCRA Petition. *Commonwealth v. Whitacre,* No. 1459 WDA 2011, 50 A.3d 237 (Pa. Super. 2012). (ECF No. 5-4 at 2). The Pennsylvania Supreme Court denied further review on October 22, 2012. *Commonwealth v. Whitacre*, 55 A.3d 524 (ECF No. 5-5 at 2).

On or about October 31, 2012, Whitacre, pro se, filed a Second Motion for Post

Conviction Collateral Relief. (ECF No. 32-1), in which he raised the following seven claims:

I.      CLAIM OF ACTUAL INNOCENCE

II.     THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING
PETITIONER THE RIGHT TO QUESTION TROOPER WITMER ON THE
EXCULPATORY EVIDENCE.


III.    PROSECUTORIAL    MISCONDUCT    BASED    ON    AFTER
DISCOVERED EVIDENCE.

IV.     ALL PRIOR COUNSEL WERE CONSTITUTIONALLY INEFFECTIVE
FOR FAILING TO PURSUE THE CLAIMS:  TRIAL COURT ABUSE OF
DISCRETION AND PROSECUTORIAL MISCONDUCT.

V.      THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION
FOR JUDGMENT OF ACQUITTAL BASED ON CONTRADICTORY
EVIDENCE PROVIDED BY COMMONWEALTH WITNESSES.

VI.     ALL PRIOR COUNSEL WERE CONSTITUTIONALLY INEFFECTIVE
FOR FAILING TO PURSUE OR TO PROPERLY PURSUE THIS CLAIM:
"THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION FOR
JUDGMENT OF ACQUITTAL."

VII.    TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE, AND
POST    CONVICTION    COLLATERAL    RELIEF    COUNSEL    WAS
CONSTITUTIONALLY    INEFFECTIVE    AND/OR    ABANDONED
PETITIONER.

Second Motion for Post Conviction Collateral Relief.  (ECF No. 32-1).

On January 9, 2013,  President Judge Martin issued an Order notifying Petitioner that

pursuant to Pennsylvania Rule of Criminal Procedure 907, the Court intended to denying the

Second Motion without a hearing.  Petitioner was advised that his attempts "to use a layered

ineffectiveness counsel claim to explain Defendant's inability to bring the claims sooner," were

insufficient to bring the Second Motion within the timeliness parameters of 42 Pa. C.S.A §

9545(b)(1)(ii). (ECF No. 5-6, at 2-3.) On January 29, 2013, the PCRA court denied the Second Motion for Post Conviction Collateral Relief. (ECF No. 5-7).

On September 4, 2013, the Pennsylvania Superior Court issued an opinion affirming the denial of Whitacre's Second Motion for Post Conviction Collateral Relief on the basis of untimeliness. *Commonwealth v. Whitacre,* No. 335 WDA 2013, slip op. (Sept. 4, 2013). (ECF No. 51-1 at 1).

On or about September 18, 2013, Whitacre initiated the present proceedings in this Court by filing a pro se petition for writ of habeas corpus. He raises ten claims for relief. Petition Under § 2254 for Writ of Habeas Corpus. (ECF No. 1). Respondents filed an Answer on February 20, 2014, (ECF No. 12), to which Whitacre filed a Reply on March 24, 2014. (ECF No. 53). *See* Local Rule 2254(E)(2) (a petitioner "may file a reply . . . within 30 days of the date the respondent files its answer."). The matter is ripe for disposition.

### B.    Standard of Review

#### 1.    28 U.S.C. § 2254

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Fulton's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See., e.g., Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *See also Real v. Shannon,* 600 F.3d 302-309-10 (3d Cir. 2010).

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004). As codified at 28 U.S.C. § 2254(d), AEDPA provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States has stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 392, 410 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, that application must be "objectively unreasonable." *Id.* at 409. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997), and "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

*Renico v. Lett*, 599 U.S. 766, 773 (2010).

Even more pointedly, the Supreme Court elaborated:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Our Court of Appeals has made clear that "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman,* 160 F.3d 941, 954 (3d Cir. 1998). Put simply, "habeas proceedings are not the appropriate forum for [a prisoner] to pursue claims of error at the PCRA proceeding . . . . It is the original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004).

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume all of the state court's factual findings are correct unless the presumption is rebutted by clear and convincing evidence. *See., e.g., Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also Weeks v. Snyder*, 219 F.3d 245, 259 (3d Cir. 2000) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court).

2.      Procedural Issues

Before the Court can address the merits of Whitacre's claims, it is necessary to examine whether this petition fulfills the applicable procedural requirements, as set forth in AEDPA.

a.      *AEDPA's Statute of Limitations*

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under AEDPA's one-year limitations period for section 2254 petitions. 28 U.S.C. § 2244(d). Respondents argue that Whitacre petition is untimely.

Whitacre's judgment of conviction became final on March 29, 2006 (90 days after the Pennsylvania Supreme Court denied his petition for allowance of appeal ("PAA"). Whitacre filed a timely PCRA petition on April 7, 2006. His PCRA proceeding was pending until October 22, 2012, when his PAA was denied. All time between April 7, 2006 and October 22, 2012 is excluded. The AEDPA clock starting running again on October 23, 2012. The instant federal habeas petition was filed on September 4, 2013, 316 days after the clock started running again. Therefore, Whitacre's claims are timely under AEDPA's statute of limitations

b.      *Exhaustion*

It is next necessary to determine whether Whitacre's claims have been adequately exhausted in the state courts.    28 U.S.C. § 2254(c). It is well settled that a state prisoner must exhaust all of his claims by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509,

517 (1982). The burden is on the habeas petitioner to establish that he has presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)). In Pennsylvania, this requirement generally means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then to the Superior Court either on direct or PCRA appeal. *See, e.g., Lambert,* 387 F.3d at 233-34.[2]

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate remedy exists. *Christy v. Horn*, 115 F.3d 201, 206 (3d Cir. 1997); *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). This Court can deny an unexhausted claim on the merits only if the claim is without merit.

### c. *State Court Procedural Default*

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." doctrine." *Gray v. Netherland*, 518 U.S. 152, 162, (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Sistrunk v. Vaughn*, 96 F.3d 666, 675 (3d Cir .1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is

---

[2] Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address the claim. *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007).

"independent" of the federal question and "adequate" to support the judgment. *Coleman*, 501 U.S. at 750.

As the United States Court of Appeals for the Third Circuit explained in *Rolan v. Coleman*:

> Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001); or when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

*Rolan,* 680 F.3d 311, 317 (3d Cir. 2012).

In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the United State Supreme Court held that federal courts should not reach an alleged violation of federal law on habeas review if the state court's decision rests on an independent and adequate state ground.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

"The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307 (2011). The doctrine applies whether the default occurred at trial, on appeal, or during collateral proceedings. *Edward v. Carpenter*, 529 U.S. 446, 451 (2000).

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. *Sistrunk*, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an "independent"

and "adequate" state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. *Glass v. Vaughn*, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); *Carter*, 62 F.3d at 595. The procedural default doctrine applies only when a state procedural rule is consistently and regularly applied. *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Johnson v. Mississippi*, 486 U.S. 578, 588–89 (1988)); *see also Doctor,* 96 F.3d at 684 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either (i) "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice;." or that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Martinez v. Ryan*, -- U.S. ---, 132 S. Ct. 1309 (2012). The United States Supreme Court has defined "cause" as "some objective factor external to the defense." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list. *Id.*

The second exception to the procedural default rule arises when a petitioner demonstrates that failing to allow his claims to proceed would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320-22 (1995) (decided in the context of successive petitioner). To show a fundamental miscarriage of justice, a petitioner must demonstrate that "a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 321 (quoting *Murray*, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. Once such evidence is presented, a petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327. There is no question that the instant case is not the type of extraordinary case in which Whitacre can overcome the default of his claims by way of the miscarriage of justice exception.

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72 (1977).

## C. Discussion of Petitioner's Claims

Whitacre raises the following ten grounds for relief:

CLAIM ONE: "Claim of actual innocence."

CLAIM TWO – "The Prosecutor engaged in deliberate misconduct and the trial court abused [its] discretion, violating Petitioner's fifth, sixth, eighth, and fourteenth Amendment Rights under the United States Constitution to assemble a jury together."

CLAIM THREE – "The Prosecutor withheld exculpatory evidence from the jury, denying Petitioner his due process rights and a fair trial, in violation of the fifth and fourteenth amendments of the United States Constitution."

CLAIM FOUR: "The trial court abused [its] discretion in discretion in denying Petitioner the right to question Trooper Witmer on exculpatory evidence, thus denying him due process of the law and a fair trial, which violated his rights under the fifth, sixth, and fourteenth amendments of the United States Constitution."

CLAIM FIVE: "Petitioner had ineffective assistance of counsel in the trial court by his attorney's failure to object to the prosecutorial misconduct and trial court abuse of discretion when Petitioner's trial was continued during his first attempt to assemble a jury together."

CLAIM SIX: "Petitioner had ineffective assistance of counsel in the trial court by his attorney's failure to file a motion to force the prosecution to redress the known false testimony in claim #3, and by his attorney's failure to give the court the right date of the exculpatory statements given to Trooper Witmer in claim #4.

CLAIM SEVEN: "Petitioner had ineffective assistance of counsel by his attorney's failure to call an available alibi witness to testify on Petitioner's behalf at trial."

CLAIM EIGHT: "Petitioner had ineffective assistance of counsel by his attorney's failure to call available character witnesses to testify on Petitioner's behalf at trial."

CLAIM NINE: "Petitioner had ineffective assistance of counsel by his attorney's failure to produce evidence he promised to the jury in his opening argument."

CLAIM TEN: "Petitioner had ineffective assistance of counsel by his attorney's failure to use a forensic expert to review / rebut evidence in the case."

Respondent argues that Claims One – Six, inclusive, and Claim Nine are procedurally defaulted and should be dismissed. As to Claims Seven, Eight and Ten, Respondent argues these claims should be dismissed as they lack merit.

a.      *Claim One Is Not Cognizable In This Federal Habeas Case*

In Claim One, Whitacre contends that he is "actually innocent," that he was home with his wife at the time of the crimes charge; that the Commonwealth presented "contradictory, and sometimes false testimony to show Petitioner had motive, means, and opportunity to commit the crimes charged," and that "[t]here were fingerprints, footprints, and other forensic evidence found at crime scene, not attributed to Petitioner or anyone else, and thought to be from the perpetrator." (ECF No. 5 at 10-11.)

A stand-alone claim of actual innocence is not cognizable in federal habeas. *Albrecht v. Horn*, 485 F.3d 103, 121-11 (3d Cir. 2007) (citing *Herrera v. Collins*, 506 U.S. 390 (1993)). *See*

*also* BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 1:60, WestlawNext (database updated June 2015) ("A freestanding claim of actual innocence in a non-capital case based on newly discovered evidence is not a ground for habeas corpus relief." (citing *Herrera*, additional citations omitted)).   For this reason, it is recommended that Claim One be dismissed. Additionally, as explained *infra*, Claim One should also be dismissed as that claim is not exhausted.

      b.     *Claims One, Two, Three, Four, Five, Six, and Nine Are Procedurally Defaulted*

Whitacre did not raise any of these seven claims on direct appeal to the Pennsylvania Superior Court. He also did not present Claims Three, Four, Five, Six and Nine in his first PCRA action; however, he did present Claims One and Two in his first PCRA action, but did not present these two claims to the Superior Court on PCRA appeal.   Whitacre did present these seven claims to the PCRA court in his second PCRA action, but the PCRA court dismissed his second PCRA action as untimely pursuant to 42 Pa.C.S.A. § 9545(b)(1)(ii), and the Superior Court affirmed. Because Whitacre did not exhaust these claims, each claim is now procedurally defaulted.

A petitioner who has defaulted a federal habeas claim can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." *See Coleman*, 501 U.S. at 750.  Whitacre points to no evidence and makes no allegation concerning cause for his default or prejudice stemming therefore.   Nor has Whitacre sufficiently demonstrated  "that this Court's refusal to reach the merits on this claim will cause a 'fundamental miscarriage of justice'."  *Id.*   This only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably

resulted in the conviction of one who is actually innocent. *Hubbard v. Pinchak*, 378 F.3d 333, 339-41 (3d Cir. 2004). It is not applicable to Whitacre's case. Accordingly, the Court finds that Whitacre has provided no basis to overcome the default and Claims One, Two, Three, Four, Five, Six, and Nine should be dismissed.

c. *Claims Seven, Eight and Ten Should be Denied*

Whitacre did not raise Claims Seven, Eight and Ten on direct appeal; however, he did raise these issues in his first PCRA action. Because both the PCRA court and the Superior Court denied the claims on their merits, this Court's review is governed by AEDPA's standard of review.

The clearly established federal law with respect to a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires (a) that counsel's performance fall below an objective standard of reasonableness, and also (b) that the petitioner suffer prejudice as a result of counsel's error. The Pennsylvania standard for ineffective assistance of counsel is identical to the federal standard. *Boyd v. Waymart*, 579 F.3d 330, 334 (3d Cir. 2009).

In analyzing Whitacre's claims under the two-part test announced in *Strickland*, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under *Strickland* is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. *Berryman v. Morton*, 100 F.3d 1089, 1095 (3d Cir. 1996).

The Supreme Court of the United States recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review.

The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (internal quotations and citations omitted). The Court further instructed:

Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S.Ct. at 788 (internal quotations and citations omitted).

Reviewing Whitacre's claims through AEDPA's deferential standards of review, this Court must conclude that the claims have no merit. As to Claim Seven, i.e., trial counsel's failure to call Whitacre's wife as an alibi witness, the Superior Court held as follows:

> The PCRA court specifically credited trial counsel's testimony. We cannot disturb that determination. . . . Moreover, our review supports the PCRA court's conclusion that trial counsel's chosen course of action was reasonable. Thus, our inquiry ends, and [Whitacre's] claim of ineffectiveness fails.

Superior Court Opinion, 5/8/2012 (ECF No. 5-4 at 6-8.) As to Claim Eight, i.e., trial counsel was ineffective for failing to call character witnesses, the Superior Court again found that the testimony from the PCRA hearings supported the PCRA court's conclusions:

> Once, again, we cannot disturb the PCRA court's decision to credit trial counsel's testimony. (internal citation omitted). Moreover, our review of the record supports the PCRA court's determination that trial counsel possessed written statements taken from witnesses during the Commonwealth's investigation that would be detrimental to [Whitacre] had he introduced reputation testimony through character witnesses. Thus, [Whitacre's] second ineffectiveness claim does not entitle him to relief.

(ECF No. 5-4, at 9-10). As to Whitacre's third claim of ineffectiveness (Claim Ten, i.e., trial counsel was ineffective for failing to have defense expert review / rebut evidence in the case), the Superior Court reviewed and affirmed the PCRA court's decision stating:

> Our review of the record supports the PCRA court's conclusion. Although during the PCRA hearing, [Whitacre] called an expert who testified what further investigation could have been done, [Whitacre] proffered no evidence that such inquiry would have provided evidence favorable to him. As stated above, a "hindsight evaluation" cannot be used to establish ineffectiveness. (internal citation omitted). That is precisely what [Whitacre] proffers to support his ineffectiveness claim.

(ECF No. 5-4, at 11).

In reviewing Claims Seven, Eight, and Ten, it is clear that the state courts applied the correct standard for ineffective assistance of counsel. The Court finds that the Superior Court's determination was neither an unreasonable application of *Strickland* nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). For these reasons, it is recommended that Claims Seven, Eight, and Ten be dismissed.

## D.    Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Whitacre's claims should be dismissed. Accordingly, a certificate of appealability should be denied.

E.    **Conclusion**

For all of the above reasons, it is respectfully recommended that the petition for a writ of habeas corpus be dismissed.  It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file written Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

Dated:  April  19, 2016

cc:    **RANDY CLARK WHITACRE**
FH-0857
SCI-Benner
301 Institution Drive
Bellefonte, PA 16823
(via U.S. First Class Mail)

**Patrick Dougherty**
Office of the District Attorney of Indiana County
(via ECF electronic notification)